UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GREG ADKISSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:13-CV-505-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| | ) | *Lead Case Consolidated with* |
| KEVIN THOMPSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:13-CV-666-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| | ) | as c*onsolidated with* |
| JOE CUNNINGHAM, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:14-CV-20-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| BILL ROSE, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No.: 3:15-CV-17-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| CRAIG WILKINSON, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-274-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |
| ANGIE SHELTON, as wife and next of | ) | |
| Kin on behalf of Mike Shelton, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No.: 3:15-CV-420-TAV-HBG |
| JACOBS ENGINEERING GROUP, INC., | ) | |
|     Defendant. | ) | |

| | | |
|---|---|---|
| JOHNNY CHURCH,<br>  Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>  Defendant. | ) ) ) ) ) ) | No.: 3:15-CV-460-TAV-HBG |
| DONALD R. VANGUILDER, JR.,<br>  Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>  Defendant. | ) ) ) ) ) ) | No.: 3:15-CV-462-TAV-HBG |
| JUDY IVENS, as sister and next of kin,<br>on behalf of JEAN NANCE, deceased,<br>  Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>  Defendant. | ) ) ) ) ) ) ) ) | No.: 3:16-CV-635-TAV-HBG |
| PAUL RANDY FARROW,<br>  Plaintiff,<br>v.<br>JACOBS ENGINEERING GROUP, INC.,<br>  Defendant. | ) ) ) ) ) ) | No.: 3:16-CV-636-TAV-HBG |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02. Now before the Court are the following:

  (1) Plaintiffs' Report Regarding New Expert Witnesses [Doc. 233 in *Adkisson*, 3:13-CV-505; Doc. 228 in *Thompson*, 3:13-CV-666; Doc. 209 in *Cunningham*, 3:14-CV-20; Doc. 155 in *Rose*, 3:15-CV-17; Doc. 164 in *Wilkinson*, 3:15-CV-274; Doc. 145 in *Shelton*, 3:15-CV-420; Doc. 147 in *Church*, 3:15-CV-460; Doc. 149 in *Vanguilder*, 3:15-CV-462; Doc. 75 in *Ivens*, 3:16-CV-635; and Doc. 71 in *Farrow*, 3:16-CV-636]; and

  (2) Defendant's Response to Plaintiffs' Report Regarding New Expert Witnesses and Motion to Exclude the Expert Opinions of Barry S. Levy, M.D., M.P.H., Kenneth S. Garza, C.I.H., M.S., and Marco Kaltofen, Ph.D., P.E. [Doc. 234 in *Adkisson*, 3:13-CV-505; Doc. 229 in *Thompson*, 3:13-CV-666; Doc. 210 in

*Cunningham*, 3:14-CV-20; Doc. 156 in *Rose*, 3:15-CV-17; Doc. 165 in *Wilkinson*, 3:15-CV-274; Doc. 146 in *Shelton*, 3:15-CV-420; Doc. 148 in *Church*, 3:15-CV-460; Doc. 150 in *Vanguilder*, 3:15-CV-462; Doc. 76 in *Ivens*, 3:16-CV-635; and Doc. 72 in *Farrow*, 3:16-CV-636].

For the reasons stated more fully below, the Court will **DENY** Plaintiffs' request to extend the expert disclosure deadline, and **GRANT** Defendant's motion to exclude Plaintiffs' proposed expert witnesses.

I. **Relevant Background**

On January 30, 2017, the District Court consolidated the above captioned cases for discovery, motion practice, and a bifurcated trial plan. [Doc. 136].[1] In sum, Phase 1 of trial will deal with general causation. [*See id.* at 7]. Phase 1 of trial was originally scheduled for January 29, 2018, in addition to the following deadlines: (1) Plaintiffs' expert disclosures were due May 1, 2017, (2) Defendant's expert disclosures were due June 17, 2017, (3) rebuttal expert disclosures were due July 5, 2017, (4) all discovery (fact and expert) was to be completed by October 13, 2017, and (5) the parties had until October 27, 2017 to file *Daubert* and summary judgment motions. [Doc. 138 at 3-4].

On May 18, 2017, shortly after Plaintiffs' expert disclosure deadline, the Court conducted a discovery conference to address Defendant's complaints regarding deficiencies in Plaintiffs' expert reports. The Court found that of the eight expert witnesses Plaintiffs had disclosed for Phase 1 of trial, Plaintiffs failed to provide written reports for Paul Terry, Ph.D., M.P.G., F.A.C.E., and Rajiv Dhand, M.D., F.C.C.P., F.A.C.P., F.A.A.R.C., and the written reports of William J. Rea, M.D., and John W. Ellis, M.D., were deficient under Federal Rule of Civil Procedure (a)(2)(B). [Doc. 162]. The Court ordered Plaintiffs to (1) produce written reports for Dr. Terry and Dr.

---

[1] Unless otherwise indicated, citations to the record refer to the docket entries in *Adkisson*, 3:13-CV-505.

Dhand, and (2) supplement the written reports of Dr. Rea and Dr. Ellis by July 14, 2017. [*Id.* at 10, 14]. Defendant's expert disclosure deadline was accordingly extended to August 18, 2017. [*Id.* at 14].

Defendant complained at a subsequent discovery conference held on August 15, 2017, that Plaintiffs' supplemental expert reports remained deficient. Although Dr. Ellis and Dr. Dhand had been withdrawn, Defendant argued that the supplemental reports by Dr. Rea and Dr. Terry continued to be incomplete, and the reports provided by Plaintiffs' other four remaining expert witnesses were similarly deficient.

In position statements provided to the Court by the parties ahead of the August 15, 2017 discovery conference, Defendant outlined perceived deficiencies in Plaintiffs' expert reports, including that the reports lacked an explained basis for the conclusions reached therein, the facts or data considered by the experts, and the exhibits to be used at trial. Notably, Defendant also argued, in its position statement and before the Court, that Plaintiffs' expert reports did not address any of the issues that Defendant believed Plaintiffs must prove to meet their burden on general causation. Relying on various case law, including *In re TVA Ash Spill Litig.*, 805 F. Supp.3d 486, 482 (E.D. Tenn. Aug. 2, 2011), Defendant argued that Plaintiffs must present expert testimony that: (a) establishes each of Plaintiffs' injuries; (b) determines the dose and duration of each Plaintiffs' actual exposure to the potentially toxic constituents within fly ash (as opposed to just exposure to the ash itself); (c) reviews the scientific literature to determine the predicted response to the identified dose; and (d) finds that the dose in question is capable of causing the injuries in question. Defendant, however, did not seek any specific relief from the Court and, instead, noticed Plaintiffs that it would challenge the merits of Plaintiffs' expert proof on general causation through

forthcoming pleadings.² [Doc. 178 at 3]. Indeed, less than two months later, on October 6, 2017, Defendant filed a Motion for Partial Summary Judgment on General Causation. [Doc. 191].

Plaintiffs responded shortly thereafter by moving to continue Phase I of the trial and to modify other deadlines accordingly to allow Plaintiffs to continue discovery. [Doc. 200]. On November 9, 2017, the District Court granted Plaintiffs' motion to continue to the extent that Phase I of the trial was continued to April 16, 2018, all unexpired deadlines were recalculated according to the same time limitations set forth in the original Scheduling Order, and "the dispositive motion and expert disclosure deadlines are reset to **120** days prior to the trial date." [Doc. 215 at 3 (emphasis in original)]. The District Court then denied without prejudice with leave to refile Defendant's motion for partial summary judgment. [*Id.*].

The District Court subsequently held a status conference on November 30, 2017, to address scheduling matters and provide clarification of the expert disclosure deadline. [*See* Docs. 217 & 219]. Plaintiffs' counsel informed the District Court that its office had recently suffered a fire, prompting the District Court to continue the trial to September 17, 2018, and to move the dipositive motion deadline to 150 days prior to trial. [Docs. 220 & 224]. As to a lack of agreement between the parties over the expert disclosure deadline, the matter was referred to this Court, given the undersigned's familiarity with the issue pertaining to expert disclosures in this case. In short, Plaintiffs interpreted the extension of time as setting an entirely new deadline for the disclosure of new expert witnesses and/or reports, while Defendant believed the extension of time only applied to existing experts and merely allowed for the supplementation of existing reports. [Doc. 219].

On December 8, 2017, this Court held a discovery conference to address the expert

---

² The Court notes that Defendant timely disclosed its experts on August 18, 2017, and Plaintiffs did not serve any rebuttal expert proof.

disclosure issue. Plaintiffs stated they anticipated adding three new expert witnesses, including Avner Vengosh, Ph.D., who was initially identified as a potential fact witness in Plaintiffs' initial disclosures, and eliminating one or two of their existing expert witnesses. While Plaintiffs argued that the continuance order reopened the expert disclosure deadline, this Court subsequently determined that the District Court "neither contemplated nor anticipated the introduction of new expert witnesses when it reset the expert disclosure deadline," but rather "the extension of time was meant to accommodate the Plaintiffs' specific request to allow their existing experts more time to complete and/or supplement their reports accordingly." [Doc. 230 at 4-5].

Nonetheless, given that Defendant was at least aware of Dr. Vengosh to some extent, the Court gave Plaintiffs 30 days to submit a short report that: (1) identified the names of the other proposed expert witnesses; (2) stated generally the testimony the experts are expected to provide; (3) stated the basis for the experts' testimony; and (4) stated why Plaintiffs need these expert witnesses and why the Court should allow late disclosure. [Doc. 230 at 6]. Thereafter, the Court would determine whether "good cause" had been shown for allowing new experts in this case.

On February 7, 2018, Plaintiffs filed their report [Doc. 233], and on February 16, 2018, Defendant filed a response in opposition and a motion to exclude Plaintiffs' proposed expert reports under Rule 37 [Doc. 234]. Thus, the parties have fully briefed the Court on whether Plaintiffs should be allowed to disclose new expert witnesses, and the matter is now ready for disposition.

## II. Positions of the Parties

Plaintiffs seek to introduce the following three expert witnesses: (1) Barry S. Levy, M.D., M.P.H., an occupational and environmental health physician and epidemiologist who is expected to testify that exposure to fly ash and its constituents is capable of causing Plaintiffs' illnesses; (2)

Kenneth S. Garza, C.I.H., M.S., a consultant on industrial hygiene matters who is expected to testify about the measurements of fly ash performed by contractors, including Defendant, the standard of care for measurements and worker safety, and Defendant's breach of those standards; and (3) Marco Kaltofen, Ph.D., P.E., a consultant in chemical radionuclide environmental fate and transport investigations who is expected to testify about the general exposure of Plaintiffs to fly ash and its toxic constituents, that Defendant's monitoring data does not fully present all exposure evidence, and the methods to determine general exposure levels to provide additional information about exposure not captured by Defendant and other contractors. [Doc. 233 at 5-7]. Although Plaintiffs anticipated that one of their new experts would be Dr. Vengosh, he no longer is proposed to be a witness. Plaintiffs explain that Dr. Vengosh is no longer available as he "has taken on other projects . . . and cannot meet the short deadlines in this case . . . ." [*Id.* at 4].

Based on the parties' disagreement on the requisite proof needed to demonstrate general causation, Plaintiffs assert that they need these experts "to make sure they meet the Court's expectations for proof of 'general causation' for Phase I" should the District Court agree with Defendant's theory on general causation. [*Id.* at 9-10]. Furthermore, Plaintiffs argue that they should be allowed to introduce the foregoing expert witnesses because Defendant failed to provide discovery in a timely manner, Defendant's exposure data has been proven untrustworthy, and Defendant will not be prejudiced by the addition of three new expert witnesses. [*Id.* at 10-11].

As a preliminary matter, Defendant submits that the standard this Court should apply in determining whether the expert disclosure deadline should be reopened is not "good cause," but rather "excusable neglect" under Rule 6. [Doc. 234 at 7-11]. Under either rule, however, Defendant contends that Plaintiffs are unable to meet their burden as they essentially ask for a "redo" of their expert proof after having the opportunity to review Defendant's theory on general

7

causation in its motion for partial summary judgment. Defendant argues that Plaintiffs were unreasonably dilatory in moving for an extension of time. [*Id.* at 13-22]. Furthermore, Defendant argues it would be prejudiced by the disclosure of new expert witnesses, because these experts would be setting forth entirely new theories. [*Id.* at 15-16]. Therefore, Defendant contends it would likely need additional time to disclose additional expert proof and determine whether new experts are needed, which in turn would cause Defendant to incur substantial cost and would likely result in the trial being delayed. [*Id.* at 17-18]. Finally, Defendant submits that Plaintiffs' proposed expert witnesses should be excluded under Rule 37(c)(1), because Plaintiffs cannot demonstrate that their late disclosure is either substantially justified or harmless. [*Id.* at 23-25].

### III. Legal Standard for an Extension of Time

In the Court's January 8, 2018 Order, the Court stated it would determine "whether the Plaintiffs have shown good cause for allowing new experts in these cases" and cited to Rule 16. [Doc. 230 at 6]. Rule 16(b)(a) states a court's scheduling order "may be modified only for good cause and with the judge's consent." In determining whether good cause has been shown, the primary consideration is "the moving party's diligence in attempting to meet the case management order's requirements." *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 377 (6th Cir. 2009) (internal quotations omitted) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). Additionally, whether the nonmoving party would be prejudiced by the modification is a relevant factor to consider. *Id.* However, even in the absence of prejudice, the moving party must nonetheless demonstrate good cause for "why he failed to move for the amendment at a time that would not have required a modification of the scheduling order." *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (citing *Leary v. Daeschner*, 349 F.3d 888, 906-08 (6th Cir. 2003)).

Because Plaintiffs are seeking an extension of time of an expired deadline, Defendant argues that Plaintiffs must meet a higher burden and urges the Court to instead apply the standard set forth in Rule 6. Rule 6(b)(1)(B) provides that a "court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Our Supreme Court has set out five factors courts are to balance in determining whether excusable neglect exists:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship*, 507 U.S. 380, 395 (1993)).

The recent decision in *Century Indem. Co. v. Begley Co.*, No. 5:17-CV-138-JMH, 2018 WL 272576, at *2-4 (E.D. Ky. Jan. 3, 2018) highlights the somewhat confusing relationship between Rule 6 and Rule 16, and the inconsistency in which courts have applied the rules. (citing numerous case law from various circuits in demonstrating that the application and overlapping relationship of Rule 6's "excusable neglect" standard and Rule 16's "good cause" standard is muddled). While the Sixth Circuit in *Leary*, 349 F.3d at 905-09, applied Rule 16's "good cause" standard when the plaintiff sought to amend the complaint after the deadline for doing so had passed, the Eastern District of Kentucky also recognized that "no Sixth Circuit case has ever held that Rule 6(b) does not apply" in similar circumstances. *Century Indem. Co.*, 2018 WL 272576 at *2 (citing *First Tech. Cap., Inc. v. BancTec, Inc.*, No. 5:15-CV-138, 2017 WL 2735516, at *4 n.7 (E.D. Ky. June 26, 2017)).

Indeed, this Court and District have applied Rule 6 in instances where a party has requested

9

an extension of time to an already-expired deadline. *See Barnes v. Malinak*, No. 3:15-CV-556-PLR-HBG, 2017 WL 3161686, at *1 (E.D. Tenn. July 25, 2017) (finding plaintiff had not shown good cause but also concluding that excusable neglect was not demonstrated under Rule 6); *Am.'s Collectibles Network, Inc. v. Syndicate 1414*, No. 3:08-CV-96, 2009 WL 2929417, at *1 (E.D. Tenn. Sept. 8, 2009) ("[T]his Court may only grant an extension of this deadline for good cause and upon a showing by defendants that their failure to file a dispositive motion prior to the July 17, 2009 deadline was due to excusable neglect."). Thus, regardless of whether Rule 6 or Rule 16 is more applicable, the movant must nonetheless demonstrate "good cause," a standard enumerated in both rules. *See id.*; *Century Indem. Co.*, 2018 WL 272576 at *3 ("But regardless of which rule applies, the movant must first show 'good cause.'").[3]

## IV. Analysis

For the reasons stated below, the Court finds that Plaintiffs have not demonstrated diligence in meeting the expert disclosure deadline in this case, nor have they shown excusable neglect, so as to justify the reopening of the expert disclosure deadline under either Rule 6 or Rule 16. Furthermore, Plaintiffs' conduct is neither substantially justified nor harmless, and therefore, Plaintiffs' proposed expert witnesses will also be excluded under Rule 37.

### A. Good Cause

Plaintiffs argue that their primary basis for seeking an extension of time to disclosure new experts is to ensure that they meet the standard of proof on general causation argued by Defendant should the District Court agree with Defendant's theory in that regard. Plaintiffs acknowledge that the parties have always disagreed on the burden of proof Plaintiffs must meet to demonstrate

---

[3] The Court notes that the District Court's original Scheduling Order also provides that the deadlines set forth therein "will not change except for good cause." [Doc. 37 at 2].

10

general causation, but that it became "even clearer that the parties have a substantial disagreement on the proof that is necessary for Phase I based on Defendant's motion for partial summary judgment." [Doc. 233 at 9]. Therefore, "[o]ut of abundance of caution" should the District Court "determine[] that general proof of exposure is necessary to establish general causation," Plaintiffs maintain the testimony of Dr. Levy, Dr. Kaltofen, and Mr. Garza is necessary. [*Id.* at 10]. The Court finds Plaintiffs' argument falls short of good cause.

At the latest, Plaintiffs were on notice of Defendant's theory on general causation when the Court conducted its August 15, 2017 discovery conference.[4] In its position statement and argument before the Court, Defendant was abundantly clear on what it believed to be the standard of proof Plaintiffs must put forward to satisfy their burden on general causation, and that none of Plaintiffs' expert reports satisfied Plaintiffs' burden in this regard. Relying on *In re TVA Ash Spill Litig.*, and other case law, Defendant expressly laid out what it believed to be the elements on general causation, and that to Plaintiffs' detriment, none of Plaintiffs' expert reports identified the level or dose of fly ash exposure that is necessary to cause the injuries alleged, Plaintiffs' actual exposure level, or whether Plaintiffs' exposure level is sufficient to cause the injuries alleged.

Despite being placed on notice of Defendant's theory on general causation, Plaintiff waited until October 25, 2017, over five months after their expert disclosure deadline had passed, more than two months after the August 15, 2017 discovery conference was held, but only 14 days after Defendant moved for partial summary judgment on general causation, to argue for an extension of time of the expert disclosure deadline. The timing of Plaintiffs' request suggests, and indeed

---

[4] In its January 30, 2017 order consolidating this matter for bifurcated proceedings, the District Court recognized "that while the parties agreed that there is a general causation element in these cases, the parties appeared to disagree somewhat on how plaintiffs could prove general causation." [Doc. 136 at 5 n.2].

11

Plaintiffs appear to concede, that it thought better of Defendant's theory on general causation when faced with Defendant's dispositive motion. Plaintiffs, however, have had more than ample opportunity to seek an extension, and their choice to wait reflects a lack of diligence on their part.

Plaintiffs also submit three additional reasons why the Court should permit an extension of time, none of which the Court finds to be well-taken. First, Plaintiffs argue that Defendant did not provide discovery in a timely manner, which prompted Plaintiffs to move for a continuance. Moreover, Plaintiffs argue that the timing of their request is justified due to Defendant disclosing new witnesses after Plaintiffs' expert disclosure deadline—witnesses that purport to have information relevant to the reliability of air monitoring results—and Defendant's August 8, 2017 "document dump" of approximately 56,000 documents, as well as an additional 10,000 documents turned over shortly thereafter.

Even if the Court were to agree that the foregoing discovery necessitated reopening the expert disclosure deadline, Plaintiffs' position nonetheless fails to explain their delay in requesting an extension of time. For example, Plaintiffs make no attempt to justify waiting over two months, the time between the referenced "document dump" and their request for an extension of time, to seek a modification of the expert disclosure deadline. Furthermore, Plaintiffs do not identify with any specificity the identity of the witnesses or information learned through Defendant's "untimely" discovery that is now pertinent to Plaintiffs' need to bring in new expert witnesses. "[I]f a party is delayed in discovering the basis for amending its pleadings due to circumstances beyond its control, it may use that delay as a basis for arguing that a Rule 16(b) order deadline should be extended." *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-CV-0569, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007). Here, however, it remains unclear why the "untimely" discovery necessitates new expert witnesses as opposed to supplementing existing expert reports.

12

Second, Plaintiffs argue that late disclosure of its three proposed expert witnesses should be allowed because "Plaintiffs have only *recently* determined that Defendant's data relevant to Plaintiffs' exposure to coal ash and its constituents are wholly untrustworthy." [Doc. 233 at 11] (emphasis added). To the contrary, Plaintiffs' Amended Complaint specifically alleges that Defendant's conduct "lowered the readings and produced unsafe, misleading results" and "created inaccurate results of the fly ash monitoring records . . . ." [Doc. 214 at 17]. Plaintiffs concede that they have always questioned the reliability of Defendant's air monitoring results but cite to affidavits submitted contemporaneously with Plaintiffs' motion to continue as evidence that it has now become "apparent the data is wholly unreliable." [Doc. 233 at 11].

One such affidavit is that of identified expert witness, Roy Hudgens, M.S., who opines "that there was an apparent effort by Jacobs Engineering to underestimate the amount of fly ash and fugitive dust that the workers were exposed to," and that Defendant's "lack of adherence to proper air monitoring test controls more likely than not invalidates their testing results in this matter." [Doc. 205-7 at 1, 3]. Mr. Hudgens's opinions mirror those he expressed in Plaintiffs' May 1, 2017 expert disclosures. Thus, even assuming that Plaintiffs now have more concrete evidence of unreliable air monitoring results, Plaintiffs' theory remains consistent with the allegations set forth in their Amended Complaint. In other words, Plaintiffs have known all along that their proof would necessitate expert testimony on the reliability of Defendant's air monitoring results. Plaintiffs again fail to explain why new expert witnesses are necessary as opposed to supplementing existing expert reports such as that of Mr. Hudgens.

Finally, Plaintiffs submit that Defendant would not be prejudiced by disclosure of new expert witnesses. Plaintiffs maintain that the September 17, 2018 trial date provides as much time for expert discovery as typically provided under the District Court's standard scheduling order,

13

and therefore, Defendant will have ample time to revise its expert reports, secure new experts if necessary, and renew its motion for partial summary judgment or file *Daubert* motions. In addition, because Defendant did not depose any of Plaintiffs' original expert witnesses, Plaintiff argues Defendant will not be prejudiced should it need to depose Plaintiffs' new experts.

The Court finds that the addition of new expert witnesses at this juncture will indeed prejudice Defendant as the current trial date is likely to be impacted. The preliminary reports of proposed experts Dr. Levy and Dr. Kaltofen, for example, indicate that the methodologies and opinions to be offered will be based on studies that have yet to be conducted.[5] [*See* Docs. 233-1 at 3-4, 9 and 233-3 at 3-4]. Given the number of Plaintiffs in this case, the voluminous discovery involved, and the various extensions of time that have already been granted, the Court is doubtful that a new round of expert discovery can be conducted in a manner that does not disrupt the trial date. At a minimum, Plaintiffs' expert disclosures are unlikely to be completed prior to the April 20, 2018 dispositive motion deadline, and moving the dispositive motion deadline will almost certainly impact the trial date. Plaintiffs further cannot guarantee that Defendant would not need additional time to disclose its expert proof, particularly if Defendant was forced to retain entirely new expert witnesses. In addition, the costs Defendant would incur in conducting further expert discovery also undermines Plaintiffs' contention that Defendant would not be prejudiced.

Regardless of any prejudice Defendant may or may not suffer, the Court is mindful that "the absence of prejudice to the opposing party is not equivalent to a showing of good cause."

---

[5] The Court notes that Plaintiffs do not explain why they need a second epidemiologist, Dr. Levy, when Plaintiffs timely disclosed their other epidemiologist, Dr. Terry. Further troubling to the Court is Defendant's contention that despite Dr. Terry having been identified in Plaintiffs' May 1, 2017 expert disclosures, Plaintiffs have yet to provide a final report by Dr. Terry or any testing data related to his epidemiology study. [Doc. 234 at 17 n.12]. The Court reiterates that Dr. Terry was one of Plaintiffs' expert witnesses whom the Court ordered nine months ago must produce a written report in conformance with Rule 26(a)(2)(B). [Doc. 162 at 10].

*Permasteelisa CS Corp.*, 2007 WL 1683668 at *1 (citations omitted); *see Korn*, 382 F. App'x at 450. Rather, "the touchstone of the good cause inquiry . . . is whether the moving party acted diligently in attempting to meet the deadline set forth in the pretrial order." *Permasteelisa CS Corp.*, 2007 WL 1683668 at *2. Because of Plaintiffs' delay in moving for an extension of time, the Court finds that good cause does not exist to extend the expert disclosure deadline.

### B. Excusable Neglect

Plaintiffs' failure to show good cause makes it impossible to satisfy the standard under Rule 6. *See Century Indem. Co.*, 2018 WL 272576 at *3. Even so, the Court finds that Plaintiffs cannot satisfy the *Pioneer* factors for excusable neglect because: (1) an extension of the expert disclosure deadline would prejudice Defendant; (2) reopening expert discovery would more than likely further delay Phase 1 of trial which has already been continued twice; (3) the primary reason cited by Plaintiffs for extending the expert disclosure deadline is for Plaintiffs to mount a defense against Defendant's theory on general causation, a theory they have known about for months; (4) therefore, the delay in seeking an extension of time was reasonably within the control of Plaintiffs; and (5) the Court finds that Plaintiffs have not acted in good faith in waiting until October 2017 to seek an extension of time on a deadline that expired more than five months ago.

### C. Defendant's Motion to Exclude New Expert Witnesses under Rule 37

Finally, because Plaintiffs have failed to comply with their expert disclosure deadline and have not shown good cause or excusable neglect for an extension of time, Defendant moves under Rule 37(c)(1) to exclude the opinions and testimony of Plaintiffs' proposed new expert witnesses. Plaintiffs have not provided a response to Defendant's motion and the time for doing so has expired. *See* E.D. Tenn. L.R. 7.1.

Federal Rule Civil Procedure 37(c)(1) provides, "If a party fails to provide information or

identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Courts have applied Rule 37(c)(1) in the context of a moving party's failure to show "good cause" or "excusable neglect." *See Kassim v. United Airlines, Inc.*, 320 F.R.D. 451, 453 (E.D. Mich. 2017) (determining first whether the plaintiff's failure to timely file expert disclosures was due to excusable neglect and then determining whether the delay was substantially justified as to avoid Rule 37(c)(1)'s sanction of exclusion). Courts have explained, "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a); that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *Hunt v. Hadden*, 127 F. Supp. 3d 780, 789 (E.D. Mich. 2015), *aff'd,* 665 F. App'x 435 (6th Cir. 2016) (quoting *Roberts ex rel. Johnson v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir. 2003)) (other citations omitted). The burden is on the potentially sanctioned party to prove harmlessness. *Id.* (citing *Roberts ex rel. Johnson,* 325 F.3d at 782).

For the reasons expressed above in concluding that Plaintiffs have not acted diligently or shown excusable neglect, the Court finds that Plaintiffs' actions cannot be found to be substantially justified or harmless. Plaintiffs were on notice no later than August 2017 of Defendant's theory on general causation. The only reasonable justification Plaintiffs have provided in waiting until October 2017 to move for an extension of the expert disclosure deadline was that Defendant untimely turned over discovery that was pertinent to Plaintiffs' expert proof. But this reasoning does not substantially justify the introduction of *new* experts. Plaintiffs asserted this argument in their motion to continue but argued it as a basis to allow *current* experts in this case to have more time to complete or supplement their reports accordingly. [Docs. 200 at 9 and 230 at 4-5].

Furthermore, the Court granted Plaintiffs the opportunity to show good cause for reopening the expert disclosure deadline because Plaintiffs had initially identified Dr. Vengosh, who is now not even being considered as one of Plaintiffs' proposed expert witnesses. Because new expert witnesses and theories would likely delay the trial and cause Defendant to spend additional time, resources, and money, the Court concludes that the introduction of Plaintiffs' proposed expert witnesses would not be harmless.

Therefore, the Court finds Defendant's motion to be well-taken.

## V. Conclusion

Accordingly, for the reasons stated herein, the Court **ORDERS** as follows:

(1) Plaintiffs' request to extend the expert disclosure deadline [**Doc. 233** in *Adkisson*, 3:13-CV-505; **Doc. 228** in *Thompson*, 3:13-CV-666; **Doc. 209** in *Cunningham*, 3:14-CV-20; **Doc. 155** in *Rose*, 3:15-CV-17; **Doc. 164** in *Wilkinson*, 3:15-CV-274; **Doc. 145** in *Shelton*, 3:15-CV-420; **Doc. 147** in *Church*, 3:15-CV-460; **Doc. 149** in *Vanguilder*, 3:15-CV-462; **Doc. 75** in *Ivens*, 3:16-CV-635; **Doc. 71** in *Farrow*, 3:16-CV-636] is **DENIED**, and

(2) Defendant's Motion to Exclude the Expert Opinions of Barry S. Levy, M.D., M.P.H., Kenneth S. Garza, C.I.H., M.S., and Marco Kaltofen, Ph.D., P.E. [**Doc. 234** in *Adkisson*, 3:13-CV-505; **Doc. 229** in *Thompson*, 3:13-CV-666; **Doc. 210** in *Cunningham*, 3:14-CV-20; **Doc. 156** in *Rose*, 3:15-CV-17; **Doc. 165** in *Wilkinson*, 3:15-CV-274; **Doc. 146** in *Shelton*, 3:15-CV-420; **Doc. 148** in *Church*, 3:15-CV-460; **Doc. 150** in *Vanguilder*, 3:15-CV-462; **Doc. 76** in *Ivens*, 3:16-CV-635; **Doc. 72** in *Farrow*, 3:16-CV-636] is **GRANTED**.

IT IS SO ORDERED.

ENTER:

*Bruce Guyton*
United States Magistrate Judge